COLLINGSWORTH *vs*. HORN.

S. & P.
4sp237,
93 439,

## COLLINGSWORTH *vs.* HORN.

1. At common law, an execution, bearing a regular date, anterior to the death of a defendant, (though the date be, by relation, back,) might have been received by the officer, after the death of the defendant, and levied on the goods of the estate, and the same sold, without making the personal representative a party.

2. If, however, the personal representative had been made a party to the execution, without a revival of the judgment, by *scire facias*, against him, it seems such execution would be *void.*

3. *Semble*—In this State if no execution issues upon a judgment, until after the expiration of a year and a day, from the time rendered; or, if not sued out *before* the death of a defendant— in either case, an execution taken out, without a revival by *scire facias*, might be considered irregular.

4. In the event, however, of the death of a defendant, after execution has begun, *it seems*, that no revival against the personal representative would be essential, where regular executions have preceded his death; and a lien has been kept up and continued, from the first execution to the last.

5. For, *it seems, also*, that in cases, where an execution is returned to the proper term, and the clerk, within a reasonable time, (consistent with his other duties,) issues an *alias* or *pluries*, regularly, thereon; any lien, which may have been acquired by the original execution, is transferred from it, (by such regular issues,) to such *alias* or *pluries;* and is thus continued and preserved.

6. Where, however, executions have not regularly issued, from term to term, so as to keep up the lien, acquired on an original *fi. fa.;* and rights have been obtained, by third persons, to property, in the possession of a defendant, while the first execution was in the sheriff's hands—it is competent for strangers to take advantage of the loss of the lien.

7. But *Semble*, where executions are taken out upon a judgment, obtained in one's life time, which are regularly issued and returned; and, after the defendant's death, a subsequent execution is issued and levied upon property which the defendant may have had in his possession before his death—a lien is acquired, which the death of the defendant does not destroy—so as to vest the property in his personal representative.

8. And where such an execution thus regularly preceded, is is-

sued after the death of the defendant, (though it *might* be irregular,) yet it is not *void*, but *voidable* only; and can not be questioned by a stranger.

9. So, it seems, a *pluries* execution issued upon a judgment obtained in the life time of a defendant, and which has been regularly preceded by *alias* and original—both returned *nulla bona;* is not *void*, because issued after the defendant's death.

Error to the Circuit Court of Blount.

In this case, Horn, the defendant in error, having laid claim to certain slaves, levied on, under execution at law, as of the estate of one Hanby, the regular proceedings under the statute, were instituted, to try the right of property.

Collingsworth, the plaintiff in error, having, in the lifetime of Hanby, to wit, at Spring term, 1824, of Blount Circuit Court, recovered judgment against him, executions were regularly issued thereon, and duly returned *nulla bona.*

In 1826 Hanby departed this life; and Horn, the defendant in error, qualified as his administrator; but was subsequently removed, and the sheriff invested with the appointment. After the death of Hanby a *pluries* execution, upon the subsisting judgment against him, was issued, and levied upon two slaves. Horn having filed an affidavit, that the slaves were his property, the claim came on to be tried before the Circuit Court of Blount, at April term, 1831.

These facts appearing in evidence, the Circuit Court charged the jury, that the fact, that the execution, levied upon the slaves, had issued after the death of Hanby, rendered the execution *void*. Under this charge, the jury rendered a verdict in favor of the defendant; and the plaintiff in execution, haying excepted, took a writ of error to this Court.

*Peck*, for the plaintiff in error—*Campbell, contra.*

SAFFOLD, J.—The contest arose on the trial of the right of property, levied on by execution, and claimed pursuant to the statute.

The plaintiff in error, in 1824, recovered judgment against Gabriel Hanby, on which executions were regularly issued, up to the time of the levy, in 1828; upon all of which executions, the sheriff had made returns of *nulla bona*, except the last, which was levied on the property in question.

The defendant, Hanby, died in 1826. Horn, the claimant of the property, was appointed administrator, and was removed. The sheriff, who made the levy, received his appointment before the levy was made, and then was administrator.

These circumstances appearing on the trial, the Court charged the jury, that the execution having issued after the death of Hanby, it was *void*.

The property in question consisted of two slaves. Under the charge given, the jury found the property not subject to the execution.

This charge is assigned as the cause of error.

The case presents the questions—

1st. Was a revival of the judgment necessary under the circumstances of the case, by a *scire facias* against the administrator?

2d. If it was, had the claimant of the property, he being neither party nor privy to the judgment, a right to claim advantage of the failure to revive?

A statute exists in this State, relative to liens by execution; but which being of a date subsequent to these proceedings, may be left entirely out of view, in the consideration of this case. The questions

must be determined with reference to the common
law, and the statute of 1826, entitled "an act con-
cerning executions, and for the relief of insolvent
debtors;" the 8th section of which provides, "that
no writ of *fieri facias*, or other writ of execution,
shall bind the property of the goods against which
such writ is sued forth, but from the time that such
writ shall be delivered to the sheriff, under sheriff,
coroner or other officer, to be executed; and for the
better manifestation of such time, such sheriff, coro-
ner, or other officer, his deputy or agent, shall upon
the receipt of any such writ, without fee for doing
the same, indorse upon the back thereof, the day
of the month and the year when he received the
same," &c.

The distinction has been assumed in argument,
and in the opinion of the Circuit Court, between
void and voidable process, that the former may be
resisted and set aside by any person against whom it
is attempted to be used; the latter only by parties
and privies: and it is contended, that this *fi. fa.* was
void, consequently that the claimant of the property
could successfully resist its supposed lien, on that
ground.

It is conceded, that executions, by the common
law, bound the goods and chattels of the defendant
from their test; but by the statute referred to, the
lien attaches only upon the delivery of the execution
to the proper officer, for collection. In the case of
*Bragner* vs. *Langmead*,[a] the Court of Kings Bench
held, pursuant to the current English doctrine, that
a judgment signed in any part of the term, or the
subsequent vacation, relates back to the first day of
the term, notwithstanding the death of the defendant,

[a] 7 Durn. & East, 20

before judgment actually signed : and an execution might be taken out upon it, tested the first day of the term.

Lord *Kenyon*, in delivering the opinion, said, they were bound by the current of authorities, all speaking the same language : that in every case which had occurred, it had been held, " that the execution may relate back to the first day of the term, though the defendant died before execution actually taken out, unless something be done, in the interim, to shew an incongruity in the proceedings—as was done in the case of *Heapy* vs *Parris*.

In explaining the incongruity in the case last mentioned, and in reconciling it with the principles by which that Court had uniformly been governed, he said—" There the plaintiff did not sue out execution tested on a day, prior to the death of the defendant, as he might, perhaps, have done, so that it might have legal relation ; but the execution, sued out after the death, bore test on a day posterior to the defendant's death—and, consequently, that the execution was irregular."

The same doctrine is maintained in Comyn's Digest, vol. 4: p. 247, (title Executions, D. 2.) There, reference is also made, to the English statute,[a] " that no *scire facias*, or other writ of execution shall bind the property of the goods, but from the time such writ shall be delivered to the sheriff, &c. to be executed ; who, on the receipt of it shall indorse the day of his receiving the same."

It is also said,[b] if a *fieri facias* be tested before the death of the defendant, and delivered to the sheriff, after his death, it may be executed upon goods in the hands of the executor or administrator.

a29 Car.2,3

b4Com.Di.<br>248

4 s & p.        31

Again[a] — if execution be taken out, after the death of the defendant against his executor or administrator, without a *scire facias,* it is *void.* These principles r est on the authority of early English cases; and are not considered, when properly understood, irreconcileable with each other, or with the modern doctrine.

The correct rule of the common law is believed to be, that an execution, bearing a regular date, anterior to the death of the defendant, (though the date be by relation back,) may be received by the sheriff, after the death of the defendant, levied on the goods of the estate, and the same may be *legally* sold, without making the personal representative a party.[b] But, if such representative be made a party to the execution, without a revival of the judgment, by a *scire facias* against him, (as in the last case referred to in Comyn,) the process may be *void,* when it would have been regular, had it been taken only against the goods of the deceased, as though he had been living.

By another statute, in force in this State, it is directed, " that all writs, returnable to any Court of record shall bear test on the day on which the same shall be issued.[c] This requisition is conceived to apply to executions, as well as to other process—consequently, the doctrine of relation to the previous term, or the first day of the term, does not apply to our jurisprudence.

But, whether this fiction can have any effect, as respects the *lien* of the execution, or the *legality* of the process, may well be questioned. It is a question, however, which can have no material influence

a29Car.250

b6Bac. Ab. 114

cAik. Dig. 278

COLLINGSWORTH vs. HORN.

in this case—in as much as the original *fi. fa.* bore bore date long before the death of the defendant; and the *pluries fi. fa.,* by virtue of which, the levy was made, bore date long after the death. The material inquiry, then, is, whether, after execution had commenced, by the regular issuance and return of *nulla bona,* on the original and *alias,* before the death of the defendant, the plaintiff had a right to continue to sue out further writs of execution, after the return of the former, without a revival of the judgment against the administrator. It has been shewn that the lien of executions on the goods and chattels of defendants, is substantially the same, under the English and Alabama statutes. The date of the lien under each, relates to the time of the delivery of the execution to the proper officer, to be executed.

The principle may be assumed, for it is not understood to be contested, that if execution be not actually sued out, within a year and a day after the judgment has been rendered; or if not sued out before the death of the defendant—in either case, it is irregular to take it out, without a previous revival of the judgment, by *scire facias;* and in the latter case, the revival must be against the executor or administrator. But, it does not follow, that in the event of the death of a defendant, after execution has begun, that such revival of the judgment is necessary. The necessity can only exist, on the principle that the *alias* or *pluries fi. fa.* though regularly continued, do not retain the lien on the defendant's property. from the time of the delivery of the first execution to the officer. This would deny them any legality or virtue, derived, by relation to the original *fi. fa.*; which, and also the *alias,* in this case, were issued and delivered in the life-time of the defendant.

*3Dessaus. R. 539.* The case of *Brown* vs. *Gilliland*,[a] involved this doctrine. Brown, as executor had made sale at auction, of slaves, belonging to the estate of his testator. There were, at the time, executions in the sheriff's office, against the testator, which remained unsatisfied, and on which there had been returns of *nulla bona.* The purchaser refused to pay the purchase money, unless it should be applied to the discharge of the executions, so as to secure his title. The executor contended, the negroes were not bound by the executions, because they had been acquired by the testator, after the executions had been returned.

The suit in Chancery was instituted for the guidance and safety of the parties, and was considered amicable. The question then was, whether the lien of an execution was confined to such goods, only, as belonged to the debtor at the time when the writ was lodged; or whether it extended to goods acquired by him, afterwards?

Judge *Thompson,* in the Circuit Court, decreed a specifiic execution of the contract. He said, "he considered such an execution precisely as if it never had issued, in as much as there were no effects on which it could have attached, and of course could have no binding efficacy." That "the execution was defunct previous to the acquisition of the property; and it would be in vain to say a non-existing thing can possess existing powers." On appeal, however, to the revising tribunal, this doctrine was overruled, and the decree reversed, on the ground, that the executions bound the property, and that a good title could not be made to the purchaser. In this opinion the Court, consisting of four judges, was

unanimous. The reasoning of the Court was, "that every debt, as soon as contracted, vests in the creditor, a right to be paid out of any part of the debtor's estate; and while only a chose in action, it has an inchoate lien on all his property, whether acquired before or after the contract. When sued, therefore, and the right is consummated by a judgment and execution, the general lien of both becomes perfect, and should continue to charge not only the existing property of the debtor, but also to attach on all his future acquisitions. If indeed (say they) an execution becomes dormant, it must be revived by a *scire facias,* before it can have active operation; but its binding quality, like that of a judgment, continues until it is satisfied, or until length of time furnishes sufficient ground for presuming satisfaction."

It is however necessary to observe, that the question in this case is not, whether the defendant's property was bound from the delivery of the original *fi. fa.* to the sheriff to be executed; or whether from the delivery of the *pluries* on which the levy was made. Indeed, it does not appear that the difference in the lien, whether from the one date or the other, was considered in the least material. But the question is, whether the *pluries fi. fa.* was void, and subject to resistance by a third person, whose rights were incidentally involved? On the former question, the case of *Brown* vs. *Gilliland,* is an authority sustaining the lien from the earliest date; and this doctrine I consider best supported by reason and authority. There are, however, some contrary decisions in respect to contests arising between different plaintiffs in execution. In the case of *Tabb* vs. *Harris,*[a] the R. 29.

HARVARD LAW SCHOOL LIBRARY

[a] 4 Bil R. 29.

sheriff had two writs of *fi. fa.* in favor of different plaintiffs, against the same defendant. The execution last received was in favor of one who had previously had other writs issued on his judgment, but which had been returned *nulla bona.* Money being now made on the executions, but not sufficient to satisfy both, the question arose, which should be prefered. The Court ruled, that where several executions issue against the same defendant, the sheriff is bound to satisfy that execution first, which is first delivered to him. That as between plaintiffs in execution, a former execution not levied and returned, does not create a lien to the exclusion of the second creditor, who delivers his execution when the sheriff had no other against the debtor.

That Court seems to have recognised a distinction in respect to liens by executions, where the contest is between the different plaintiffs therein, and where it is between one of them, and a purchaser from the defendant himself. In the former case, they deny any relation back to the delivery of the original *fi. fa.* as directed by statute, or to the test, according to the doctrine of the common law. They say, " the common law, regardful of the interest of plaintiffs, and to preserve it against the fraudulent acts of defendants, in alienating their goods, made writs of execution have relation to their test, and bind the estate of defendants from that time; so that if they should sell their goods, thereafter, they might be taken in execution in whose hands they might come. But, as between plaintiffs in execution, the common law knew no partiality, and created no lien in favor of one, in prejudice to that of another."

I can not perceive the force of these remarks, or

the virtue of the impartiality here inculcated.—
There would appear to be no sufficient reason, why
a *bona fide* purchaser from the defendant, after his
property has become bound by an execution, should
occupy a less favorable position, than that of a plain-
tiff in a subsequent execution, placed in the hands
of the sheriff after the property had become so bound.
In a subsequent case in the same Court, *Daniel* vs.
*Cochran's adm'rs,*[a] the question was similar to that
in the former. There the same Court said, " we can
perceive no principle upon which the lien, created by
an execution, can be continued in virtue thereof, af-
ter its return day." But they add, "the lien, in-
deed, might be continued at common law, by contin-
uing the executions; and may, since the statute, by
delivering a new execution into the hands of the
sheriff, at the same time the former is returned; or
rather we ought, in strict propriety, to say, that an
uninterrupted succession of liens might be thus kept
up."

 These latter positions I construe into an aban-
donment of so much of the principle of the former
decision, as denied the existence of prior liens as
between executions. The latter decision admits,
that the defendant's property is bound from the de-
livery of the first *fi. fa.* and that the lien may be
transferred from a prior to a subsequent writ; that
it may be continued at common law, by the renewal
of the executions in due time—that in this way, an
uninterrupted succession of liens may be preserved.

 The return of one *fi. fa.* and the issuance and
delivery of another, on the same judgment, are acts
falling within the official duties of the clerk and
sheriff: why should the lapse of a few days, at the

[a] 4 Bibb R. 533.

return term, when these acts must be done, create a forfeiture of the lien ? To prevent it, shall the clerk, in anticipation of a return of *nulla bona,* have an *alias,* or *pluries,* ready to exchange with the sheriff, at the moment he makes his return ; or shall the sheriff show the execution containing the return, intended to be made, and stand by, holding the execution, until, the clerk, (laying aside all other business) can prepare the *alias,* so that there shall be no intervening space between the actual return of one, and receipt of the other. I think it more just and rational, and the course best supported by authority, to require only, that the original shall be returned to the proper term—then as soon as may be, consistently with his other duties, the clerk shall issue the *alias* or *pluries.*

If the plaintiff does not interfere, to the contrary, (but which he may do, at his peril,) and if the renewal be made in a reasonable time, the lien shall shall be transferred from the original, to the *alias* and *pluries,* as a continued execution, on the same judgment, and thereby be preserved.

The principle of the decision, in the case of *Epps* vs. *Randolph,*[a] which has been cited to the contrary, does not affect this question.

But, I now recur to the true question, whether or not the *pluries fi. fa.* was void, and subject to resistance from a third person? Let it be conceded for the present, that in consequence of the death of the defendant, there was the same necessity for a renewal of the judgment by *scire facias,* that there is in cases where no execution has issued within a year and a day after judgment—then what would be the effect?

COLLINGSWORTH *vs.* HORN.

In *Jackson* vs. *Delancy*,[a] it was held, that a *scire facias,* to revive a judgment, irregularly issued ; or an execution issued after a year and a day, without a *scire facias,* is voidable only, and can not be called in question, in a collateral action, so as to defeat the title of a purchaser, under the execution ; nor can such execution be avoided, after the lapse of twenty years, even on a direct application for that purpose.[b]

[a] 13 Johns. R. 537.

[b] 3 Caine's R. 270—8 Johns. 361; 4 Camp 48 Burr 1188; 7 Johns.556 2 Bay, 338.

The remedy against an execution, merely *voidable,* far want of a renewal of the judgment, by *scire facias,* must be the same, whether the necessity for the renewal arose from the death of a party, or from lapse of time, after judgment obtained.   There would appear to be no satisfactory reason, for any difference. If the defendant in execution or his representative chooses to acquiesce in the irregularity, because the effect is substantially the same, and costs are thereby avoided—or for any other cause ; and if the effect of the judgment or execution, with, or without a renewal of the former, be the same, with respect to the rights of third persons, surely there can be no reason for permitting them to delay and hinder the execution, for any matter exclusively concerning the parties to the writ, and entirely indifferent to those claiming advantage of the irregularity.

Should a case occur, where rights have accrued to third persons, which would be affected by a lien, existing from the date of the original *fi. fa ;* but not from that of the *alias* or *pluries;* and the lien has, by law, been forfeited or discharged, by any subsequent event, and which would appear from the writs, if regular, then, I admit, that such third persons, (the

4 s. & p.                    32

claimant of property, for instance,) may insist on the
forfeiture or discharge, and demand the same sub-
stantive rights, as if the proceedings had been regu-
lar—that, in such case, if the claimant's *title to the*
property accrued subsequent to the delivery of the
original *fi. fa.*, but prior to that of the *alias* or *plu-
ries;* and the lien had been lost by the death of the
defendant, or failure to revive the judgment, by *scire
facias*, or to renew the writs of execution, regularly,
from term to term, so as to preserve the lien from the
first to the last, the claimant would have been enti-
tled to the benefit thereof; and the Court should have
instructed the jury, that the plaintiff's lien related
only to the date of the delivery of the *alias* or *plu-
ries,* (as the case may have been,) not to the delive-
ry of the original.

If, by reason of the death of the defendant, after judg-
ment, *and before the issuance of the original fi. fa.*, it
had become necessary to revive the judgment, making
the personal representative a party, and this had not
been done, the effect would have been different:
then, the property being free from any lien, or in-
cumbrance, the law would have vested the special
title in the executor or administrator, and an execu-
tion against the decedent, could not reach the pro-
perty.

But, as already remarked, such are not the facts of
this case. The judgment had been obtained, and
the original and subsequent *fi. fa.* had been issued
and placed in the hands of the sheriff, to be execut-
ed, in the life-time of Hanby, the defendant; and
the executions had been regularly issued, and re-
turned *nulla bona*, without any dormant internal from
the date of the judgment, up to the time of this le-

vy, by means whereof, the lien was continued, and the title to the property prevented from vesting in the personal representative, so that it was unnecessary to have made him a party.

Nor does it appear, that the claimant's title is better or different now, from what it was when the original *fi. fa.* was delivered to the sheriff. Therefore, without deciding whether the execution, under which the levy was made, was strictly *regular*, or merely *voidable*, (a question immaterial to this case,) we are of opinion, it was not *void* — consequently, that the claimant of the property was not entitled to any advantage, from the supposed want of a revival of the judgment; and that the contrary decision of the Circuit Court, was erroneous; for which the judgment must be reversed and the cause remanded.